IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 83-17

IN THE MATTER OF THE WAGE APPEAL
OF MONTANA STATE HIGHWAY PATROL
OFFICERS, MONTANA PUBLIC EMPLOYEES
ASSOCIATION, INC., and JAMES L.
RIDDLE, as a representative member
of a class similarly situated,

        Petitioners/Appellants,

   v.

BOARD OF PERSONNEL APPEALS, a
division of the Department of
Labor and Industry of the State
of Montana, STATE PERSONNEL
DIVISION, a division of the
Department of Administration of
the State of Montana, and the
DEPARTMENT OF JUSTICE, STATE OF
MONTANA,

        Respondents.

FILED

FEB 28 1984

Ethel M. Harrison
CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER AMENDING OPINION

PER CURIAM:

It appearing that language intended to be incorporated in the opinion issued January 26, 1984, was inadvertently omitted,

IT IS ORDERED:

1. That the second full paragraph on page 5 of the opinion of January 26, 1984 be amended to read in two paragraphs, as follows:

> In finding No. 9, the court found that, "The MPEA did not re-open negotiations on the subject of the 1% longevity pay after the legislature repealed the portion of § 31-105, R.C.M. (1947), which provided for it." This findings follows logically from the other findings on the issue made by the Board of Personnel Appeals and is specifically supported in the record by the testimony of Tom Schneider, Executive Director of MPEA.

- 1 -

In finding No. 11, the court found that, "The grade and step to which each officer was assigned on conversion to the Pay Plan, was based on total salary i.e. base pay plus longevity." The Board of Personnel Appeals had previously found, in its findings No. 8, that, "The grade and step to which each individual Highway Patrol officer was assigned, except five sergeants who were placed at step 2 at grade 14, were not affected by the inclusion of longevity pay in their base pay for conversion purposes to the new pay plan, i.e. placement on the pay matrix was determined by base pay alone; longevity was not included for placement purposes."

2. The material above underlined was omitted from the original opinion. No other emphasis is intended.

3. Copies hereof to counsel of record.

DONE and DATED this 23rd day of February, 1984.

_____
Chief Justice

_____

_____

_____

_____

_____

_____
Justices

- 2 -

No. 83-17

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN THE MATTER OF THE WAGE APPEAL OF
MONTANA STATE HIGHWAY PATROL OFFICERS,
MONTANA PUBLIC EMPLOYEES ASSOCIATION,
AND JAMES RIDDLE, as a representative
member of a class similarly situated,

                    Petitioners and Appellants,

    -vs-

BOARD OF PERSONNEL APPEALS, a division
of the Department of Labor & Industry
of the State of Montana, STATE PERSONNEL
DIVISION, a division of the Department of
Administration of the State of Montana,
and the DEPARTMENT OF JUSTICE, STATE OF
MONTANA,

                    Respondents and Respondents.

APPEAL FROM:  District Court of the First Judicial District,
             In and for the County of Lewis & Clark,
             The Honorable Peter G. Meloy, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Hjort, Lopach & Tippy; Barry Hjort argued,
        Helena, Montana

    For Respondents:

        Patricia Schaeffer argued, Asst. Attorney General,
        Helena, Montana

                  Submitted:  October 27, 1983

                    Decided:  January 26, 1984

Filed:    JAN 26 1984

                  Ethel M. Harrison
                         Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Certain Montana Highway Patrol officers, through the Montana Public Employees Association, Inc., appeal from an order of the District Court, First Judicial District, Lewis and Clark County, denying them the right to 1 percent yearly increments on their present salaries. The issue came before the District Court pursuant to a petition for judicial review of an administrative order issued by the Board of Personnel Appeals. We affirm the District Court.

In 1973, the Legislature passed a bill directing the Department of Administration to develop a statewide classification and pay plan. According to the bill, the new plan could not result in the decrease of any current employee's salary. Ch. 440, § 8, Laws of Montana (1973). The plan was developed along those guidelines and presented to the 1975 Legislature for its approval. By joint resolution, the Legislature approved the classification and pay plan, set forth the method for implementation, and provided that: "This wage and salary plan is in lieu of any other plan or system of pay increases for classified state employees." House Joint Resolution 37, Laws of Montana (1975).

Prior to the adoption of the plan, the Montana Highway Patrol officers received a base salary determined by rank and an increase of 1 percent per year for each additional year served. Section 31-105, R.C.M. 1947. However, in 1975, with the adoption of the plan, the Legislature repealed the provision of section 31-105, R.C.M. 1947, which provided for the 1 percent longevity increments. Therefore, effective January 4, 1975, Montana Highway Patrol officers are entitled

to recieve a base salary, an annual step increase and, in place of the annual 1 percent longveity increases for each year of service, a longevity increase of $10 per month for each five years of service.

During the same year in which the new plan was approved, the Highway Patrol officers below the rank of sergeant organized for collective bargaining and through their representative, the Montana Public Employees Association, Inc. (MPEA), negotiated a collective bargaining agreement. The agreement set grade levels for the officers and adopted in full the provisions of the new classification and pay plan.

Almost three years later, in 1978, the petitioners filed a petition with the Board of Personnel Appeals contending that the adoption and implementation of the pay plan caused a reduction in their longevity pay and that the longevity pay was either a separable part of their salary or a fringe benefit. This contention was rejected by both the hearing examiner and the Board.

The petitioners then filed a complaint and petition for judicial review in the District Court, raising the constitutional issue of impairment of contract. The District Court remanded the cause of action to the Board and directed the Board to obtain additional evidence regarding the Highway Patrol officers' employment contracts with the Department of Justice prior to the effective date of the statewide classification and pay plan.

This was done, and the hearing examiner concluded that the employment contracts were unconstitutionally impaired by the adoption of the pay plan and the repeal of section 31-105, R.C.M. 1947. The Board of Personnel Appeals adopted

the hearing examiner's findings of fact but declined to adopt his conclusions of law and recommended order. The Board stated that it would instead prefer that the District Court make the necessary legal conclusions.

Upon judicial review, the District Court modified certain findings of the hearing examiner and concluded that because the 1 percent longevity increments did not become a part of the Highway Patrol officers' employment contracts until those increments were earned, the adoption of the statwide classification and pay plan did not unconstitutionally impair any contractual right to the increments.

The following issues are raised on appeal:

1. Whether the District Court abused its discretion by making findings of fact not based on the record and also by making findings of fact specifically contrary to the findings of the Board of Personnel Appeals.

2. Whether the District Court abused its discretion by determining that certain findings of fact made by the Board of Personnel Appeals were "clearly erroneous."

3. Whether the District Court erred in determining that the Highway Patrol officers have no vested contractual right to the continuation of the 1 percent increments and that the legislative repeal of the statute containing the benefit did not constitute an unconstitutional impairment of the obligation of contract.

In regard to the first issue, the petitioners contend that the District Court exceeded its authority under the standard of review set forth by the Montana Administrative Procedure Act, section 2-4-704, MCA. Specifically, they contend that the District Court's findings of fact Nos. 3, 6,

- 4 -

9, and 11 are not supported by evidence in the record and that finding of fact No. 11 is also directly contrary to the specific finding of fact made and approved by the administrative agency.

In findings Nos. 3 and 6, the court added references to the annual step increases provided for by the statewide classification and pay plan. The petitioners contend that no mention of these increases was made in the administrative agency's findings. However, shortly after filing the initial petition in this matter, the parties stipulated that the hearing examiner could take administrative notice of, among other things, House Joint Resolution 37. In House Joint Resolution 37, the Legislature approved the statewide classification and pay plan, including the annual step increases, and set forth the method for implementing the step increases.

In finding No. 9, the court found that, "The MPEA did not re-open negotiations on the subject of the 1% longevity pay after the legislature repealed the portion of § 31-105, R.C.M. (1947), which provided for it." The Board of Personnel Appeals had previously found, in its finding No. 8, that, "The grade and step to which each individual Highway Patrol officer was assigned, except five sergeants who were placed at step 2 at grade 14, were not affected by the inclusion of longevity pay in their base pay for conversion purposes to the new pay plan, i.e., placement on the pay matrix was determined by base pay alone; longevity was not included for placement purposes."

At a glance, it would appear that the two findings contradict one another. However, a review of the testimony of Cindy Foster, a Department of Justice accountant who was

- 5 -

personally involved in instituting the 1975 pay plan for the Highway Patrol reveals that the findings are not in conflict. Foster testified that she calculated the current gross salary of each officer, using base pay plus their earned 1 percent increments. She then determined the appropriate grade level according to the classification plan and compared the old salary to step one of the appropriate grade. If the old salary was less than or equal to step one, the officer was placed at step one. If the old salary exceeded step one, the officer was placed at the step which most closely matched his salary without reducing it. Foster further testified that five sergeants were placed at grade 14, step 2, because their total salary exceeded step 1. In all other cases, placement at step 1, resulted in increased salaries for the officers.

In response to further questioning by the petitioners' counsel, Foster testified that all of the officers, except the five sergeants, would have been placed at the same level and grade on the pay matrix had the longevity portion of gross salary been excluded from, rather than included in, the officers' salary. Therefore, the 1 percent longvity increments earned to that time were included in the officers' gross salary when the officers were transferred over to the new plan, but the officers' placement on the pay matrix was generally not affected by the inclusion of the longevity increments. This was recognized by the hearing examiner but was not stated clearly in his finding. The District Court merely translated the hearing examiner's finding; it did not substitute its judgment for that of the agency on the weight of the evidence on questions of fact. Therefore, the District Court was within its authority under section 2-4-704, MCA, to make the challenged findings.

- 6 -

We now turn to the next issue on appeal. The District Court determined that the hearing examiner's findings of fact Nos. 6 and 11 were "clearly erroneous" to the extent they implied that the Highway Patrol officers had a contractual right to the 1 percent longvity increments before such increments were actually earned by the Highway Patrol officers. Findings Nos. 6 and 11 read as follows:

> "6. Highway Patrol officers employed on January 4, 1975 and prior thereto relied upon the inducement of the offer of a 1% longevity benefit, among other things, and accepted the offer by swearing an oath to faithfully perform the duties required of them. They entered into a contract of employment with the Department of Justice in accepting the offer of a 1% longevity benefit and swearing to perform their assigned duties.

> ". . .

> "11. The 1% longevity benefit set forth in Section 31-105, R.C.M. (1947) was a private right created by statute, which became a part of the individual contracts of employment between the Department of Justice and the Highway Patrol officers, who were employed prior to the date of the repeal of the law, April 21, 1975."

The petitioners contend that there was reliable, probative and substantial evidence in the record to support the hearing examiner's determination that the Highway Patrol officers had an employment contract with their employer and that the contract included a term or condition providing for the 1 percent longevity increments.

The standard of judicial review of an agency's findings is set forth in section 2-4-704(2)(e), MCA:

> "(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> ". . .

- 7 -

"(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

We have determined that a finding is "clearly erroneous" when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. Thornton v. Commissioner of the Department of Labor and Industry (Mont. 1980), 621 P.2d 1062, 1065, 37 St.Rep. 2026, 2028; Brurud v. Judge Moving and Storage Company, Inc. (1977), 172 Mont. 249, 563 P.2d 558. Here the District Court was left with a definite and firm conviction that a mistake had been committed.

In Standard Chemical Manufacturing Company v. Employment Security Division (Mont. 1980), 605 P.2d 610, 613, 37 St.Rep. 105, 108, this Court stated: "Where factual determinations are warranted by the record and have a reasonable basis in law, they are to be accepted." (Emphasis added). Although findings Nos. 6 and 11 are substantially factual, they are not entirely so. The findings also contain legal conclusions. It was these legal conclusions, implicit in the hearing examiner's findings, that were modified by the District Court. Therefore, the determination of whether the District Court erred in modifying the hearing examiner's findings depends on whether the Highway officers had, as a matter of law, an implied contractual right to the 1 percent longevity increments before those increments were earned by the individual Highway Patrol officers.

The answer to this question is the crux of the petitioners' last issue and indeed, the crux of the whole appeal. The petitioners contend that as a matter of law, the

Highway Patrol officers have a vested right to the continuation of the 1 percent longevity increments and that the legislative repeal of that portion of section 31-105, R.C.M. 1947, providing for the increments violated the constitutional protection against the impairment of contracts.

The petitioners contend that the 1 percent longevity increments became an implied term or condition of each Highway Patrol officer's employment contract after the statutory provision was adopted and went into effect. However, when the Legislature enacts a statute fixing certain terms and conditions of public employment, such as salaries and compensation, it is presumed that the statute does not create contractual rights, but is intended merely to declare a policy to be pursued until the Legislature declares otherwise. Dodge v. Board of Education (1947), 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57; Anderson v. City of Northlake (N.D. Ill. 1980), 500 F.Supp. 863. If contractual rights are to be created by statute, the language of the statute and the circumstances must manifest a legislative intent to create private rights of a contractual nature enforceable against the State. Cook v. City of Binghamton (N.Y. 1979), 398 N.E.2d 525. Here, the provision creating the 1 percent increments provided: "These salaries shall be increased one percent (1 percent) per year for each individual year of service." Neither the circumstances nor the language of the statute suggest that a contractual obligation was intended to be created.

This is not to say that the Highway Patrol officers were without any rights under the statute. The statute conferred upon the Highway Patrol officers a right to receive the 1

percent increments from the time the statutory provisions were adopted and went into effect until the Legislature repealed the statute in 1975. However, that right was not absolute.

In Williams v. Board of Education (N.J. Super. 1980), 422 A.2d 461, the Superior Court considered the nature of salary increments. There, Williams, a tenured high school principal was transferred by the local school board to the position of elementary school principal. She challenged the action of the school board as a violation of the tenure statutes which prohibited a reduction in salary upon transfer. Williams did not allege that her total salary was reduced; she alleged that her future salary expectation was reduced because the formula used to determine the annual salary increments for elementary school principals was lower than for high school principals. The court found that Williams had no vested right to future salary increases. Quoting from Greenway v. Camden Board of Education (1942), 129 N.J.L. 461, 29 A.2d 890, the court stated:

> "Increments, as used here, are the periodic, consecutive additions or increases which do not become a part of the salary of a teacher until they accrue under the rule making such provision; and, until the accrual, the modification or repeal of the rule so providing does not constitute a reduction of the current salary."
> 422 A.2d at 464.

This follows from the general rule that an employee's right to compensation vests or accrues only after he or she has performed the required services for that pay period. Mississippi ex rel. Robertson v. Miller (1928), 276 U.S. 174, 48 S.Ct. 266, 72 L.Ed 517; Fisk v. Jefferson (1885), 116 U.S. 131, 6 S.Ct. 329, 29 L.Ed. 587; In Re Dewar's Estate (1891), 10 Mont. 426, 25 P. 1026. Therefore, the government may

alter the salary of a public employee prospectively, prior to the vesting of the salary right. Personnel Division v. St. Clair (Or. App. 1972), 498 P.2d 809; Grant v. Nellius (Del. 1977), 377 A.2d 354.

Here, the Highway Patrol officers' right to receive the 1 percent increment accrued annually and vested after each year of service by the individual Highway Patrol officers. As such, the statute providing for the 1 percent increments could be modified or repealed as to the unearned increments.

This case is distinguishable from Local No. 8, International Association of Fire Fighters v. City of Great Falls (1977), 174 Mont. 53, 568 P.2d 541. There, this Court held that all firemen who served in Great Falls during the effective period of an ordinance had vested contractual rights to the benefits of the ordinance. The city had adopted an ordinance in 1956 granting firemen and policemen who had served the city a full period of 20 years an increase of pay "to induce a longer tenure of service by the same." The provisions of the ordinance were incorporated in a negotiated labor agreement between the city and the firemen's union. At all times the state statutes prescribed minimum wage scales for firemen, and provided 1 percent annual increases for longevity. However, the City of Great Falls at all times paid wages in excess of the statutory minimums to its firemen, including the longevity increases.

In 1975, the City of Great Falls, through its city commission, repealed the 1956 ordinance. This Court found that the repeal of the city ordinance unconstitutionally impaired the City's contract with the firemen because (1) the original ordinance created an implied contract, (2) the vested rights of those who could claim under the implied

- 11 -

contract were violated, (3) the provisions of the ordinance had been incorporated into the union contracts for nearly 19 years, and (4) all firemen who served while the original ordinance was in effect had a vested right to the promised increases if they would continue employment after 20 years.

The distinguishing factors in this case, as compared to those in Local No. 8, are (1) the Highway Patrol officers received their increments each year, and these increments were incorporated into the 1975 state pay plan, (2) no other contract, by union or otherwise, with the Highway Patrol officers is violated, and (3) the object of the original 1 percent statute was not a contractual inducement to become effective after 20 years of service. Therefore, the repeal of the statute in this case providing for yearly increments to the Highway Patrol officers did not trample any legal or equitable principles.

The petitioners do not contend that the Highway Patrol officers were not afforded the benefit of the 1 percent increments for the years served before the conversion to the new pay plan, nor do they contend that the Highway Patrol officers' salaries were decreased by conversion to the new pay plan. In fact, the petitioners acknowledge that the Highway Patrol officers' total salary was increased by conversion to the new pay plan.

We can find from this no impairment of a vested contractual right. The District Court is affirmed.

_____
Justice

- 12 -

We Concur:

_____
                Chief Justice

_____

_____

_____

_____
                    Justices