No. 87-412

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

IN THE MATTER OF THE CLASSIFICATION
APPEAL OF WARREN C. MEAD, et al.

STATE PERSONNEL DIVISION OF THE
DEPARTMENT OF ADMINISTRATION, STATE
OF MONTANA,

                    Petitioner and Respondent,
            -vs-

BOARD OF PERSONNEL APPEALS, DIVISION
OF THE DEPARTMENT OF LABOR & INDUSTRY
OF THE STATE OF MONTANA; and WARREN C.
MEAD, SERGEANT; JACK D. WESTROPE, LIEU-
TENANT; and HARVEY E. OLSON, CAPTAIN, as
Representatives of classes of similarly
situated individuals in the Montana Highway
Patrol,

                    Respondents and Appellants.

APPEAL FROM:  District Court of the First Judicial District,
              In and for the County of Lewis & Clark,
              The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:
            Elizabeth L. Griffing argued, Dept of Labor & Industry,
            Helena, Montana
            Barry L. Hjort argued for Mead, et al., Helena, Montana

        For Respondent:
            Kathleen F. Holden argued, Dept. of Administration,
            Helena, Montana

                                Submitted:  October 18, 1988

                                Decided:  December 22, 1988

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from a reversal of a final order of the Board of Personnel Appeals and remand by the First Judicial District, Lewis and Clark County. We affirm the District Court's reversal and remand to the Board of Personnel Appeals for further findings.

This case arose as an appeal of the classification process utilized by the Personnel Division (Division) of the Department of Administration in reallocating certain Montana Highway Patrol Officers' positions to classes under the State pay classification system. Prior to 1979, the classification series for Highway Patrol Officers consisted of the following positions and assigned grades:

| | |
|---|---|
| Officer I | Grade 12 |
| Officer II | Grade 13 |
| Sergeant | Grade 14 |
| Lieutenant | Grade 15 |
| Captain | Grade 16 |

In 1979, Officers within the Officer I class appealed to have their grade raised from grade 12 to grade 13, pursuant to § 2-18-203, MCA. Such an appeal was permissible under the statute as it existed at that time. Officers II were automatically upgraded one grade when the Officers I were successful in their appeal, pursuant to a previous stipulation between the Personnel Division, the Highway Patrol and the union representing the Officer II class. No other officers in the classification series were affected by that appeal. The Highway Patrol Officer classification series thus consisted of the following classes and grades following this successful reclassification of Officers I and II:

| | |
|---|---|
| Officer I | Grade 13 |
| Officer II | Grade 14 |
| Sergeant | Grade 14 |
| Lieutenant | Grade 15 |
| Captain | Grade 16 |

Consequently, on June 27, 1983, three Montana Highway Patrol Officers (Officers), representing the ranks of Sergeant, Lieutenant and Captain, initiated this group grievance action before the Board of Personnel Appeals (Board) to achieve a reclassification of their positions and assigned grades pursuant to § 2-18-1011, MCA, and 24.26.513, ARM. The Officers sought to compel the Personnel Division to adopt new position descriptions, develop new class specifications and reclassify their respective positions.

The Highway Patrol submitted new position descriptions for the affected officers in the initial stages of this group grievance action. The Personnel Division audited those position descriptions and found them to be accurate. The Personnel Division then classified the positions using a "five factor" formula to assign the positions to proper classes. Neither party objects to the position descriptions or the class specifications as developed.

The same "five factors" were then applied to assign a grade to the class. The application of the "five factors" resulted in an assignment of the same grades as previously assigned to Sergeant, Lieutenant and Captain. The Officers appealed this reassignment to the Board of Personnel Appeals.

A subsequent hearing was conducted before a Board Hearings Examiner. After hearing testimony from the Officers and the Division and reading briefs submitted by both parties, the Examiner issued proposed findings of fact, a conclusion of law and a recommended order on May 17, 1985.

The Hearing Examiner, after finding that the Officers "were aggrieved," recommended that the Personnel Division reclassify the upper three classes of Officers by raising their respective grade levels one pay grade. The Personnel Division filed a timely exception to these findings and oral argument took place before the full Board on October 11, 1985.

On January 7, 1986, the Board issued its order affirming the Hearing Examiner's findings of fact and conclusion of law. However, the Board amended the recommended order to require, within thirty days, "a recommendation for reclassifying those positions in accordance with Section 2-18-202(c), [sic] MCA, taking into consideration the various levels and grade hierarchies contained in the classification series . . . " Section 2-18-202(1)(c), MCA, requires that:

> (1) In providing for the classification plan, the department shall group all positions in the state service into defined classes based on similarity of duties performed, responsibilities assumed, and complexity of work so that:
>
> . . .
>
> (c) similar pay may be provided under the same conditions with equity to each position within the class.

The Division submitted its recommendation for classification on February 21, 1986. The Division found that the only difference between Officers I and II was that Officers II were required to have served six years, therefore the Division found only four distinguishable classes in the series really existed. It recommended that Officer I and II be lumped into the same class at grade 13, with the retention

4

of the original grades for the remaining classes of Officers. After oral argument before the full Board on May 23, 1986, the Board issued its final order rejecting the Division's recommendations for classification and adopting the Hearing Examiner's findings of fact, conclusion of law and recommended order.

On June 27, 1986, the Division filed for judicial review before the District Court. The District Court heard the matter on February 6, 1987, took the matter under advisement, and issued its opinion and order on June 5, 1987. The District Court found: (1) That the Board's final order did not comply with § 2-4-623, MCA; (2) that both the appeal and the final order of the Board violated § 2-18-203(2), MCA, which prohibits appeal of the grade assigned to a class; and (3) that the Board abused its discretion by not addressing each of the five factors in relation to the classification decision. Consequently, the District Court reversed the final order of the Board and remanded the case for further proceedings.

The Board appealed from the District Court's opinion and order on August 19, 1987. The Officers filed a similar appeal on August 20, 1987.

Issues

1. Did the District Court exceed its scope of review?

2. Did the District Court err in its conclusion that the Board of Personnel Appeals failed to comply with § 2-4-623, MCA?

3. Did the District Court err in holding that the Board of Personnel Appeals lacked the authority to order resolution of the grievance filed in this matter?

5

I.

Did the District Court exceed its scope of review?

This Court has recently held upon review of an agency decision that:

> [F]indings of fact will be upheld unless they are "clearly erroneous," . . . conclusions of law will be upheld unless they are an "abuse of discretion" [and] [a]n abuse of discretion results if an agency's interpretation of a statute is clearly contrary to the legislative intent behind that statute. (Citations omitted.)

Swan Corp. v. Montana Dept. of Revenue (Mont. 1988), 755 P.2d 1388, 1390, 45 St.Rep. 998, 1000. The Court in Swan noted that review of the district court's holding in such matters will be governed by the same standards. This Court has further stated that:

> [A] finding is "clearly erroneous" when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. (Citations omitted.)

Wage Appeal of Montana State Highway Patrol Officers v. Board of Personnel Appeals (1984), 208 Mont. 33, 40, 676 P.2d 194, 198. Having examined the record, this Court finds the District Court is correct in its conviction that a mistake has been committed.

The Division's application of the five factors required by the rules and regulations governing the Division initially resulted in retention of the same classes and reassignment of the existing grades. The Board, however, ignored the Division's grade assignment, instead upholding the "practice" of maintaining one grade difference between supervisors and

6

those they supervise. This ruling of the Board ignores the rules and regulations governing the classification process.

Appellants cite this Court to Wilson v. Nord (Wash.App. 1979), 597 P.2d 914. In Wilson, an employee was denied an opportunity to compete for a position which had been reclassified and upgraded, although existing administrative regulations required the state to allow eligible persons to compete against incumbents for those upgraded positions. The trial court upheld this denial of the right to compete although the incumbent had served only twenty-six months in the position, contrary to the general rule of thumb of only allowing incumbents with three years tenure in a reallocated position to automatically retain their positions. Upon appeal from the trial court's decision, the Washington Court of Appeals stated that "[f]ailure to follow the rule of thumb is not an abuse of discretion." Wilson, 597 P.2d at 918.

The instant case also involves a failure to follow a "practice" or "rule of thumb." The Division's original classification failed to follow the practice of maintaining one grade level between each class of officer. We hold that, as in the Wilson case, the failure to follow that practice was not an abuse of discretion on the part of the Division, because it properly applied the "five factors" provided in its rules and regulations and provided legitimate reasons for deviating from the "practice." We further note that the Board's findings of fact, conclusion of law and recommended order did not examine the Division's use of the "five factors." Yet, the purpose of the Board is to review the actions of the Division and to ensure that the Division properly adheres to its rules, regulations and practices. Such a review necessitates an examination of the

7

classification process utilized by the Division. We hold that the District Court did not exceed its scope of review and correctly remanded the case to the Board given the lack of findings addressing the "five factors."

## II.

Did the District Court err in its conclusion that the Board of Personnel Appeals failed to comply with § 2-4-623, MCA?

The District Court remanded the action because of the Board's failure to issue findings of fact addressing the Personnel Division's recommendation. Section 2-4-623(4), MCA, requires a ruling upon each proposed finding submitted by a party. The court held that the Division's recommendation amounted to proposed findings of fact and thus the Board erred in issuing findings of fact and conclusions of law addressing the issues raised in the parties' briefs, but not the Division's recommendation for classification. As stated by the District Court:

> [O]nce the recommendation for classification was submitted, the hearing examiner's original findings of fact were no longer relevant because they were based on the original briefs. The board became obliged to issue findings of fact which addressed the recommendation. Therefore, its summary adoption of the hearing examiner's original findings, conclusions and proposed order is insufficient. Furthermore, to simply ignore the reclassification recommendation of the division, particularly when it was invited, is arbitrary and capricious in the extreme.

Appellants contend the court erred in this determination as an express ruling on each finding is

8

unnecessary, "[a]s long as the agency's decision and order on such party's proposed findings are clear." Montana Consumer Counsel v. Public Service Commission (1975), 168 Mont. 177, 192-193, 541 P.2d 770, 777. They allege that, as in Consumer Counsel, the Board clearly rejected the Division's proposed findings and the Board therefore did not need to respond to the Division's recommendation with specific findings.

We hold, however, that the District Court correctly remanded the case for further findings expressly addressing the Division's recommendation. The ruling in Consumer Counsel is inapposite to this case. In this case, unlike in Consumer Counsel, the Board specifically requested the Division to develop this recommendation, and therefore the Division is entitled to express findings of fact and conclusions of law.

III.

Did the District Court err in holding that the Board of Personnel Appeals lacked the authority to order resolution of the grievance filed in this matter?

This issue will be broken into two parts: (1) Whether § 2-18-203(2), MCA, gives the Board the authority to order the change of the Officers' grades; and (2) whether or not § 2-18-203(2), MCA, as amended in 1981, is unconstitutional.

Section 2-18-203(2), MCA, states:

> (2) Employees and employee organizations will be given the opportunity to appeal the allocation or reallocation of a position to a class. The grade assigned to a class is not an appealable subject under 2-18-1011 through 2-18-1013. (Emphasis added.)

9

Once an employee appeals a classification of his or her position, the Board may then rule upon the appeal. As stated in § 2-18-1012, MCA:

> If upon the preponderance of the evidence taken at the hearing the board is of the opinion that the employee is aggrieved, it may issue an order to the appropriate agency or agencies of state government requiring such action as will resolve the employee's grievance. . .

Appellants contend that § 2-18-1012, MCA, gives the Board full authority to resolve any grievance brought by an employee, even if resolution of the classification appeal results in reallocation of the grade assigned to a class. In support of this contention, appellants cite to Hutchin v. State, Dept. of Fish, Wildlife & Parks (1984), 213 Mont. 15, 688 P.2d. 1257, wherein this Court stated:

> It is apparent from Section 2-18-1012, MCA, that if the Board of Personnel Appeals determines that the employee is aggrieved, it has full discretion to resolve the employee's grievance.

Hutchin, 688 P.2d at 1260.

Contrary to appellants' contention, the District Court found that the Board is limited in a classification appeal by § 2-18-203(2), MCA, to determining whether a position has been properly classified by the Division. The court held that the Board was without authority to create new classifications or to assign grades to classifications, and it distinguished Hutchin by stating:

> Hutchin involved the discharge of a state employee for personal use of state owned property. In Hutchin the board directed that the discharged employee "be reinstated as of the date of this final order to the position he held with the

10

department" at the time of his
termination. That is the type of remedy
that is uniquely within the discretion of
the board. However, the board's order
here usurps a function that has been
delegated exclusively to the division.

We agree with the District Court's holding that the
board is limited to determining whether a position is
properly classified. If a position is improperly classified,
the Board may then order the Division to reclassify the
position in accordance with its existing policy.

Appellants also contend a conflict exists as both
§§ 2-18-203(2) and 2-18-1011(1), MCA, authorize employees to
utilize the grievance procedure contained in §§ 2-18-1011
through -1013, MCA, but that these statutes do not contain
any limitation on appealing the grade assigned to a class.
Appellants thus contend the limitation contained in
§ 2-18-203(2), MCA, cannot be extended to the grievance
procedure in §§ 2-18-1011 through -1013, since the
Legislature did not expressly limit these statutes.

Section 2-18-1011(1), MCA, does not provide an
additional cause of action, rather, it sets forth the
procedure whereby an aggrieved employee may file an appeal as
allowed in § 2-18-203(2), MCA. Section 2-18-1011(1), MCA,
states:

(1) An employee or his representative
affected by the operation of parts 1
through 3 of this chapter is entitled to
file a complaint with the board of
personnel appeals provided for in
2-15-1705 and to be heard under the
provisions of a grievance procedure to be
prescribed by the board.

Therefore, we hold that the specific limitation upon grade
appeals as found in § 2-18-203(2), MCA, would control, and an

11

employee may not put the grade assigned to their class before the Board as an issue. Additionally, although appellants properly phrased their appeal as a classification appeal, thus properly placing the appeal before the Board, the Board's decision was based upon the grades assigned to the classes. The Board improperly found the Officers were aggrieved due to the grade assigned to their class and because the Division did not follow its practice of maintaining a one grade difference between supervisors and those they supervise.

As the District Court stated, the function of developing guidelines for classification is assigned to the Department of Administration. Section 2-18-202, MCA. "[T]he Board's function is limited to determining whether a position is properly classified, it has no power to create classifications and assign them to grades." The Board's action in directing the Division to change the grades assigned is outside the scope of the Board's authority.

We now turn to the question of whether § 2-18-203(2), MCA, deprives the Officers of equal protection under the law and of their fundamental right to due process. Appellant Officers contend that the statute, as upheld by the District Court, takes away their right to full legal redress as guaranteed under Article II, sec. 16 of the 1972 Montana Constitution. They contend §§ 2-18-1011 through 2-18-1013, MCA, gives state employees a property right that demands an administrative review of all Division actions which seek to take that right away.

When the constitutionality of a statute is questioned, the presumption is in favor of the constitutionality of the statute. McClanathan v. Smith (1980), 186 Mont. 56, 65, 606

P.2d 507, 512. This Court has previously stated that when the Legislature sets terms and conditions of public employment, contractual rights are not created by statute, rather the Legislature merely declares "a policy to be pursued until the Legislature declares otherwise." Wage Appeal of Montana State Highway Patrol Officers v. Board of Personnel Appeals (1984), 208 Mont. 33, 41, 676 P.2d 194, 199. In the instant case, the Legislature had set forth a policy controlling a public employee's right to appeal actions taken by the Personnel Division in performing the classification process. Under the pre-1981 statute, public employees had a right to appeal the grade assigned to their class, however, that right was not absolute. While the Legislature may not alter or eliminate an accrued or vested right, the Legislature may alter the terms and conditions of employment prospectively, where those rights have not accrued or vested. Wage Appeal, at 199-200.

We also note state employees are not a suspect class which come within the protections accorded by the Equal Protection Clause. Having determined that the challenged statute does not affect a fundamental interest or affect a suspect class, the question then becomes whether the statute rationally relates to a legitimate state interest. Pfost v. State (Mont. 1985), 713 P.2d 495, 501, 42 St.Rep. 1957, 1964.

The amendment of § 2-18-203(2), MCA, involved the regulation of an economic policy of this State, i.e. the setting of public employment salary levels. The appeal of the assignment of a grade to a class would allow employees to have the grade of their class changed without an accompanying change in the position classification. The end result would be classes having similar specifications being assigned a

13

wide range of grades, making the comparison process utilized in classification unworkable. We hold the State has a legitimate interest in preserving the state pay classification system and that the amended statute rationally relates toward effectuating that objective.

The decision of the District Court reversing the Board's ruling and remanding the case for further findings in regards to the Division's classification recommendations is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

14